**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0546n.06

Case No. 16-1105

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| VERONICA PRESNALL, Personal Representative for the Estate of Demetrice Presnall, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| WILLIAM HUEY; ANTHONY EASLICK; PATRICK D. RICHARD, in each of their official and individual capacities, jointly and severally, | ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | |

**FILED**
Sep 22, 2016
DEBORAH S. HUNT, Clerk

BEFORE: ROGERS, SUTTON, and COOK, Circuit Judges.

SUTTON, Circuit Judge. As part of a drug task force, several officers patrolled a neighborhood in Flint one evening. Two of them asked Demetrice Presnall to stop. He aimed a Beretta 9mm pistol at the two law enforcement officers, pulled the trigger several times, and, as fortune would have it, the gun misfired. Two other officers, Troopers William Huey and Anthony Easlick, saw Presnall aim the gun and responded with deadly force, killing Presnall with a series of gun shots. Presnall's mother filed this § 1983 action against the two troopers, claiming they used excessive force during the encounter. The district court rejected the claim as a matter of law, reasoning that Presnall's threat of deadly force justified the officers' use of deadly force. We affirm the district court's judgment rejecting this claim and several others.

I.

Troopers Huey and Easlick served in the Flint Area Narcotics Group, an inter-jurisdictional program known as "FANG." Lieutenant Patrick Richard, section commander of FANG, supervised the unit. On the night of June 4, 2013, Huey and Easlick assisted the associated Violent Crimes Reduction Task Force, a program operated by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The Task Force patrolled "high crime area[s] for guns and drugs, including the Evergreen Regency apartment complex," where Demetrice Presnall lived. R. 32 at 2.

The troopers arrived at the Evergreen Regency around 9:50 p.m. As the Task Force vehicles entered the apartment complex, Huey observed three men, who started walking away quickly when they noticed the marked Task Force vehicles. One of the men, Presnall, grabbed at his right belt line as he walked away. Huey did not pursue Presnall at the time because he was covering Detective Sergeant Patrick Moore, who was already speaking with someone else. When another officer arrived to support Moore, Huey looked for the man who had grabbed at his belt line. Easlick followed Huey as backup.

Huey was walking between apartment buildings when he heard someone yell, "Stop. Police." R. 26-2 at 8. He saw another officer running after a male suspect and shouting at him to stop. Huey began running parallel to the foot pursuit and was approaching the corner of a building when an officer told him, "He is running at you behind the building." *Id.* Huey attempted to cut off the suspect and, when Huey rounded the corner, he saw the same man he had seen earlier. Huey identified himself as a police officer and commanded the man to stop and to get on the ground. The man, Presnall, ignored Huey and continued to run toward two officers,

ATF Agents John Miller and Todd McAfee, who were wearing "clearly labeled" vests with "'POLICE' in large letters across the front." R. 26-6 at 3.

Presnall slowed his stride, reached to the right side of his waist band, and pulled on something that caused his shirt to stretch out. Huey realized Presnall was pulling out a weapon so he slowed down and started to draw his gun from his leg holster. Located behind and to the left of Presnall, Huey saw Presnall extend his arm and point a handgun with an extended magazine toward the ATF officers. Huey commanded Presnall to drop the weapon. But Presnall continued to extend his arm toward the ATF officers anyway. Huey and Easlick heard Presnall pull the trigger several times, apparently misfiring each time. Fearing for the lives of the ATF agents, Huey and Easlick fired about ten rounds each at Presnall. The troopers, while firing, saw Presnall reach up towards the handgun with another magazine in his left hand. Presnall fell on his side with the gun still clutched in his hand and pointed at the ATF agents. After another volley from Huey, the gun fell out of Presnall's hand. Huey stopped firing but reloaded his weapon because Presnall's handgun was still close to his hand.

Agents Miller and McAfee gave a similar account of the shooting. They approached Presnall from the opposite side of Huey and Easlick. Before the shooting, neither Miller nor McAfee saw the gun because Presnall "was basically back lit by this light that was a sodium light" in McAfee's words, R. 26-9 at 5, or "a vapor light" in Miller's words, R. 26-7 at 7. Both officers observed Presnall moving his hand, but they underestimated the threat, as Miller "was prepar[ing] to tackle Presnall" even though he was still about twenty feet away from the armed Presnall. R. 32 at 9. After Presnall fell to the ground, both agents saw the Beretta 9mm pistol and the magazine that had slipped out of Presnall's hand and had nearly killed them.

Other officers in the area confirmed this sequence of events. Officer Felix "Trevino saw Presnall's hand extended with a gun pointed at Agent McAfee." *Id.* at 5. Officers McCoy and McLeod heard the shots and saw the handgun with an extended magazine along with the additional magazine lying next to Presnall seconds after the shooting.

The autopsy identified eight gunshot wounds and two grazing wounds on Presnall's body. The Michigan State Police and the Chief Prosecuting Attorney for Genesee County investigated the shooting and found that Troopers Huey and Easlick acted reasonably—and indeed may have saved two other officers' lives. The Chief Prosecuting Attorney did not file any charges against the two troopers.

Veronica Presnall, Demetrice Presnall's mother, filed this lawsuit in federal court on behalf of her son's estate. She named Troopers Huey and Easlick and their supervisor, Patrick Richard, as defendants. Her complaint raised four claims: (1) excessive force by Huey and Easlick in violation of the Fourth and Fourteenth Amendments; (2) a practice and policy of insufficient training by Richard in violation of the Fourth and Fourteenth Amendments; (3) gross negligence, willful and wanton misconduct, assault, battery, and intentional infliction of emotional distress by Huey and Easlick in violation of Michigan law; and (4) spoliation of evidence. Veronica Presnall eventually abandoned the spoliation claim because there was "no cause of action for spoliation of evidence under federal or state law." R. 32 at 12. Huey, Easlick, and Richard filed a motion for summary judgment, which the district court granted. She appealed.

II.

*Excessive force.* If officers seize an individual "by the use of deadly force," they must satisfy "the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*,

471 U.S. 1, 7 (1985). Use of deadly force, like the use of less severe force to seize someone, satisfies the Fourth Amendment if the officers' "actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). We look at the question "from the perspective of a reasonable officer on the scene and not through the lens of 20/20 hindsight, allowing for the fact 'that police officers are often forced to make split-second judgments.'" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quotation omitted). In this instance, the reasonableness of the officers' use of deadly force to subdue Presnall thus turns on whether they had "probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others." *Garner*, 471 U.S. at 11.

In resolving this dispute on summary judgment, we read the record in favor of the claimant, asking whether the officers are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). At the same time, we must account for the qualified immunity defense of the officers: that the claimant may obtain relief only if the officers violated her son's Fourth Amendment rights *and* violated "clearly established" Fourth Amendment standards in doing so. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Veronica Presnall does not contest that "Presnall had his gun pointed east at an ATF [a]gent" and that the troopers "could see Presnall clear as day." Appellant's Br. 16. She does not contest that Huey and Easlick heard Presnall pulling the trigger. And she does not contest that Presnall "had another magazine in his left hand which was moving towards the gun in his right hand." *Id.* In the face of these undisputed facts, Huey and Easlick acted reasonably in using deadly force to stop a serious threat of deadly force.

Time and time again, we have rejected Fourth Amendment claims in this setting—when the officers used deadly force only after the suspects had aimed their guns at the officers or others. *See, e.g.*, *Boyd v. Baeppler*, 215 F.3d 594, 598, 604 (6th Cir. 2000); *Estate of Sowards v. City of Trenton*, 125 F. App'x 31, 34, 38–39 (6th Cir. 2005); *Whitlow v. City of Louisville*, 39 F. App'x 297, 300, 306 (6th Cir. 2002). Today's fact pattern requires the same analysis and outcome.

Veronica Presnall points out that some officers did not observe everything that other officers saw or heard. She notes that Miller and McAfee did not see the gun before the shooting started, and Miller acknowledges he would not have planned an open-field tackle of Presnall from twenty feet out if he could have seen the gun, which he noticed only after the shooting. But the reason Miller and McAfee did not see the gun was that they *could not* see Presnall's hands due to the backlighting. An explained absence of evidence in this context is not evidence of absence. Huey and Easlick had the better view and saw the gun, as did Officer Trevino, and that is the undisputed fact that matters, as it was Huey and Easlick who fired their weapons. The most one could say about Presnall's argument is that it creates "metaphysical doubt," if even that, "as to the material facts," which does not suffice to counter a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In a variation on this theme, Veronica Presnall argues that some officers did not hear Huey tell Presnall to drop the gun. That "establishes only that the witnesses didn't hear the announcements," not that Huey did not in fact give the order. *Chappell v. City of Cleveland*, 585 F.3d, 901, 914 (6th Cir. 2009). Some "witnesses' failure to hear" the order "does not refute" the troopers' "testimony that they in fact made" such an order. *Id.* The key undisputed facts

remain—that the Task Force identified itself as police, and Presnall aimed his gun at McAfee and Miller and pulled the trigger.

Veronica Presnall questions why the officers had any right to pursue her son at the outset, making the later use of deadly force unreasonable. One answer is that the Task Force had the right to pursue Presnall, who fled "upon noticing the police" in a high crime area. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). The other answer is that we assess the reasonableness of deadly force based on "the shooting itself and the few moments directly preceding it." *Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007); *see Chappell*, 585 F.3d at 914. In those moments, Huey and Easlick saw Presnall point a gun at their fellow officers and pull the trigger. On this record, their actions were reasonable "[i]rrespective of any errors that contributed to the circumstances" that preceded the shooting. *Id.* at 915.

*Supervisory Liability*. Any claim against Lieutenant Richard for supervisory liability under § 1983 requires a showing at the outset that he authorized or approved "unconstitutional conduct" by other officers. *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). That did not happen. Because Huey and Easlick did not violate the Fourth Amendment by shooting Presnall, Richard cannot be liable for his supervision of them. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986).

*State law claims*. Veronica Presnall also filed state law claims for assault, battery, and infliction of emotional distress on behalf of her son's estate. The problem with these claims is that Michigan law grants police officers "qualified immunity for intentional torts" if (1) "the employee's challenged acts were undertaken during the course of employment and . . . the employee was acting, or reasonably believed he was acting, within the scope of his authority"; (2) "the acts were undertaken in good faith"; and (3) "the acts were discretionary, rather than

7

ministerial, in nature." *Odom v. Wayne Cty.*, 760 N.W.2d 217, 218 (Mich. 2008); *see also* Mich. Comp. Laws § 691.1407(3). Huey and Easlick check each of these boxes. *See Bletz v. Gribble*, 641 F.3d 743, 757–58 (6th Cir. 2011). A Michigan "police officer may use reasonable force when making an arrest," and that's just what the troopers did that evening, regrettable though the end results were. *Brewer v. Perrin*, 349 N.W.2d 198, 202 (Mich. Ct. App. 1984). An officer uses deadly force "in good faith," Michigan law establishes, "when he fire[s] his firearm upon seeing the gunman aim his [gun] at [] other officer[s]." *Ealey v. City of Detroit*, 375 N.W.2d 435, 439 (Mich. Ct. App. 1985). And the use of deadly force in this kind of setting is discretionary, "involv[ing] significant decision-making that entail[ed] personal deliberation, decision, and judgment." *Oliver v. Smith*, 810 N.W.2d 57, 64 (Mich. Ct. App. 2010). Because Huey and Easlick acted reasonably to prevent imminent harm to the ATF officers, Huey and Easlick are immune from the intentional tort claims. We thus affirm the grant of summary judgment to the troopers on the assault, battery, and intentional infliction of emotional distress claims.

That leaves the gross negligence claim. That claim fails, too, because "Michigan 'has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence.'" *Miller v. Sanilac Cty.*, 606 F.3d 240, 254 (6th Cir. 2010) (quoting *VanVorous v. Burmeister*, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004)). Gross negligence "is not an independent cause of action" when the underlying claim is an intentional shooting of a suspect by an officer. *Bletz*, 641 F.3d at 756 (6th Cir. 2011). "The only cause of action available to plaintiff for allegations of this nature would be for assault and battery." *Id.* But Huey and Easlick are immune from such intentional tort claims, and Veronica Presnall cannot advance these claims in the guise of a gross negligence claim. *See id.*

For these reasons, we affirm.