NOT RECOMMENDED FOR PUBLICATION
File Name:  25a0391n.06

**No. 24-2017**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 05, 2025
KELLY L. STEPHENS, Clerk

SHERRELL KING,

    Plaintiff-Appellee,

v.

CITY OF LINCOLN PARK, MICHIGAN, a Michigan municipal corporation,

    Defendant,

NICK KOSMALSKI, in his individual capacity,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

---

Before:  GRIFFIN, LARSEN, and MATHIS, Circuit Judges.

GRIFFIN, J., announced the judgment of the court and delivered the lead opinion in which MATHIS, J., concurred in part.  MATHIS, J. (pp. 13–17), delivered a separate opinion concurring in part and dissenting in part.  LARSEN, J. (pp. 18–22), delivered a separate opinion concurring in the judgment in part and dissenting in part.

GRIFFIN, Circuit Judge.

During a traffic stop, officers discovered that plaintiff Sherrell King had outstanding traffic warrants and thus handcuffed and briefly detained her.  King twice complained about the handcuffs' tightness, but defendant Officer Nick Kosmalski ignored her second complaint.  King allegedly suffered injuries from the handcuffing, so she brought this lawsuit claiming excessive force in violation of the Fourth Amendment and gross negligence in violation of Michigan law.  Kosmalski now appeals the district court's denials of qualified immunity and state-law governmental immunity at the summary-judgment phase.  For the following reasons, we affirm

the district court's denial of qualified immunity, reverse its denial of governmental immunity, and remand for further proceedings.

I.

One morning in June 2021, City of Lincoln Park Police Department Officer Kosmalski and his partner pulled over a vehicle driven by Sherrell King for expired license-plate tabs. During the traffic stop, King told the officers that both her license-plate tabs and driver's license had recently expired but that she had an upcoming appointment to renew them.

The officers then ran a LEIN check on King's purportedly expired license, which revealed that it was suspended for outstanding traffic warrants. The officers ordered King out of the car, arrested her, and put her in handcuffs. When Kosmalski began to handcuff King, she informed him that she recently had breast-cancer surgery and thus asked not to be handcuffed behind her back. To accommodate her, Kosmalski responded that he would use two pairs of handcuffs linked together.

While Kosmalski cuffed her, King complained that the handcuffs were "kinda tight" and now claims that she said "ouch" when Kosmalski locked them. Both officers then checked the tightness of the handcuffs by sliding a finger in between a cuff and King's wrist to ensure that there was "ample space." Kosmalski ultimately double locked the handcuffs in place, meaning they could neither be loosened nor tightened.

The officers then escorted King to their patrol car. As King climbed into the vehicle, she complained about the handcuffs being too tight: "This shit hurt in the back, on my wrist." Although Kosmalski "listened" to King's complaint, he did not check the handcuffs' tightness. Indeed, he "did not respond and closed the car door." King never complained about the handcuffs again.

Ultimately, the officers issued King three traffic citations, uncuffed her, impounded her vehicle, and released her. In total, King was handcuffed for about 15 minutes.

After the officers removed King's handcuffs, she noticed that her wrists and hands were swollen and that the cuffs had left marks on her wrists. She claims that the handcuffs made her fingers numb and caused something to "pop." King sought medical treatment for her wrist injuries and has since gone to physical therapy, had two surgeries, and had two rounds of injections.

King eventually filed this civil-rights lawsuit against Kosmalski and the City of Lincoln Park. Relevant to this appeal, she alleged a 42 U.S.C. § 1983 Fourth Amendment excessive-force claim and state-law gross-negligence claim against Kosmalski in his individual capacity. Kosmalski moved for summary judgment based on qualified immunity and governmental immunity, which the district court denied. Kosmalski timely filed a notice of interlocutory appeal.

II.

We review de novo a district court's denials of qualified and governmental immunity at the summary-judgment stage. *Erickson v. Gogebic County*, 133 F.4th 703, 707 (6th Cir. 2025) (qualified immunity); *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011) (governmental immunity). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To prevail, the nonmovant must show sufficient evidence to create a genuine issue of material fact, which is to say, there must be evidence on which the jury could reasonably find for the nonmovant." *Sumpter v. Wayne County*, 868 F.3d 473, 480 (6th Cir. 2017) (citation modified). We must view all evidence and draw all inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

III.

Kosmalski first argues that he did not violate a clearly established constitutional right when he handcuffed King and should thus be protected by qualified immunity. Qualified immunity protects public officials, in certain circumstances, from liability for civil damages when they violate a person's constitutional rights. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). We ask two questions to determine whether a public official is entitled to qualified immunity: (1) whether the facts alleged support a violation of the plaintiff's constitutional rights, and (2) if they do, whether that right was clearly established at the time of the defendant's alleged misconduct. *Id.* at 232; *LaPlante v. City of Battle Creek*, 30 F.4th 572, 578–79 (6th Cir. 2022). If the public-official defendant did not violate a constitutional right, or if he did but the right was not clearly established at the time of the violation, then the defendant is entitled to qualified immunity. *See Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

Because appeals from qualified-immunity denials are interlocutory, we "may only exercise jurisdiction over the appeal to the extent that a summary judgment order denies qualified immunity based on a pure issue of law." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 399 (6th Cir. 2009) (citation modified). In such appeals, we thus consider "whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998).

A.

Beginning with prong one of the qualified-immunity analysis, King has established that a reasonable jury could find that Kosmalski violated her Fourth Amendment rights. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. "A seizure is 'unreasonable' under the Fourth Amendment if officers used excessive force." *Puskas*

*v. Delaware County*, 56 F.4th 1088, 1093 (6th Cir. 2023) (citation omitted).  For claims alleging that an officer's handcuffing was excessively forceful, a plaintiff must show that:  "(1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing."  *Morrison*, 583 F.3d at 401 (citation modified).

On appeal, Kosmalski challenges only the second element, arguing that because he addressed King's first complaint that the handcuffs were too tight, he did not ignore her.  But Kosmalski does not dispute that he ignored her second complaint.  And under our caselaw, even a "dismissive response"—i.e., an officer acknowledging a detainee's complaint but refusing to loosen the handcuffs—satisfies the second element of a handcuffing claim.  *See Baynes v. Cleveland*, 799 F.3d 600, 609 (6th Cir. 2015).  Indeed, we have held that a plaintiff "easily satisf[ies]" the second element of a handcuffing claim by establishing that the officer "responded to the complaint by sticking his finger in between the handcuffs and [the plaintiff's] skin to make sure they were not too tight" but chose not to loosen the cuffs.  *Morrison*, 583 F.3d at 402 (citation modified).  Here, Kosmalski was even less responsive than the officers in *Baynes* and *Morrison* were—he ignored King's second complaint, which is exactly the type of conduct the second element of this claim requires.

Disagreeing, Kosmalski argues that he was not required to check King's handcuffs a second time.  Yet he supports this argument with only unpublished authority.  *See Fettes v. Hendershot*, 375 F. App'x 528, 533 (6th Cir. 2010).  As explained, our published caselaw required Kosmalski to address and remedy King's complaints of too-tight handcuffs.  *See Morrison*, 583 F.3d at 402; *Baynes*, 799 F.3d at 609.  We, of course, must follow our binding caselaw.  *Cf. United States v. Cogdill*, 130 F.4th 523, 527 (6th Cir. 2025).  And under that caselaw, Kosmalski's

disregard of King's complaint, coupled with her resulting injuries, amounts to an excessively forceful handcuffing for summary-judgment purposes. Thus, at this stage of the case, there is at least a genuine dispute of material fact as to whether Kosmalski violated King's Fourth Amendment rights.

B.

King has also satisfied prong two of the qualified-immunity analysis, sufficiently showing that her right to be free from excessively forceful handcuffing is clearly established. "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 898 (6th Cir. 2019) (citation modified). Although clearly established law cannot be defined "at a high level of generality," *Godawa v. Byrd*, 798 F.3d 457, 467 (6th Cir. 2015) (citation omitted), a case with near-identical facts need not exist for a right to be clearly established, *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam). Indeed, "the *sine qua non* of the 'clearly established' inquiry is 'fair warning.'" *Baynes*, 799 F.3d at 612–13 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Given these principles, "[t]he relevant inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 610 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

The right to be free from excessively forceful handcuffing was clearly established in this circuit at the time of the incident here. "As early as 1993, we held that it was clearly established law in this circuit in 1991 . . . that excessively forceful handcuffing violates the Fourth Amendment prohibition against excessive force." *Id.* at 613 (citing *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993)). And in 2009, we laid out exactly what type of conduct constitutes an excessively forceful handcuffing: an officer's disregard to a detainee's complaint of too-tight

handcuffs that cause an injury. *Morrison*, 583 F.3d at 401. In 2019, we explicitly rejected a bright-line rule about how much time a detainee needs to be handcuffed for the cuffing to be unconstitutionally excessive and instead held that we determine excessiveness on a case-by-case, totality-of-the-circumstances basis. *See Rudolph v. Babinec*, 939 F.3d 742, 751 (6th Cir. 2019) (per curiam) ("Conduct, not time, is the measurement of a violation. To see why, imagine that someone was handcuffed so tightly that she was bleeding from her wrists and screaming in pain while an officer ignored the complaint. The law would not require us to ignore that excessive force claim because the bleeding went on for ten minutes instead of eleven.").

Kosmalski argues that even if he violated the Fourth Amendment by ignoring King's second complaint about the tight handcuffs, it was not clearly established that his conduct was unconstitutional. Not so. As explained, we have held that conduct similar to (and even less dismissive than) that at issue here was excessively forceful in violation of a clearly established right. *See Baynes*, 799 F.3d at 613–17 (cataloguing our precedent clearly establishing the right to be free from excessive handcuffing); *see also Morrison*, 583 F.3d at 401–02; *Rudolph*, 939 F.3d at 751–52; *Hughey v. Easlick*, 3 F.4th 283, 287, 293 (6th Cir. 2021). True, neither *Morrison* nor *Baynes* involved facts identical to those here. But they need not contain even "fundamentally similar" facts to clearly establish the law so long as the state of the law at the time of the handcuffing gave Kosmalski "fair warning that [his] alleged treatment of [King] was unconstitutional." *See Hope*, 536 U.S. at 741. And because a reasonable officer would have known to check and loosen the too-tight handcuffs that ultimately caused serious injuries, at this stage in the case, King has sufficiently shown that Kosmalski violated her clearly established Fourth Amendment rights. *See, e.g.*, *Morrison*, 583 F.3d at 402–04; *Baynes*, 799 F.3d at 609–16; *Rudolph*, 939 F.3d at 750–52; *Hughey*, 3 F.4th at 290–91, 293.

We are not persuaded by Kosmalski's reliance on unpublished handcuffing cases holding that the officers were entitled to qualified immunity. *See Fettes*, 375 F. App'x at 533–34; *Lee v. City of Norwalk*, 529 F. App'x 778, 781–82 (6th Cir. 2013); *Henry v. City of Flint*, 814 F. App'x 973, 983 (6th Cir. 2020). These unpublished cases aside, our published caselaw has clearly established the right to be free from an officer ignoring complaints of too-tight handcuffs. And in any event, these cases are distinguishable. *See Fettes*, 375 F. App'x at 533 (officer responded to each of plaintiff's complaints and assured him that they would loosen them); *Lee*, 529 F. App'x at 782 (plaintiff was handcuffed for only a 1.5-mile drive, a distance "that can be driven in less than five minutes"); *Henry*, 814 F. App'x at 983 (plaintiff made "indistinct" complaints, at best, about the handcuffs, and the need to get plaintiff to the police station was "pressing" given his suffering from pepper spray).

Otherwise, Kosmalski relies on one published opinion in arguing that no clearly established right is at issue here, *O'Malley v. City of Flint*, 652 F.3d 662, 671–72 (6th Cir. 2011). There, when officers approached the plaintiff upon suspicion that he had been impersonating a police officer, the plaintiff became agitated, cursed, and raised his voice, so officers handcuffed him for safety reasons while they investigated. *Id.* at 665–66. During the two minutes that the plaintiff was handcuffed, he never asked the officers to loosen the cuffs. *Id.* at 671. And the handcuffs left no "obvious physical injury." *Id.* Because a reasonable officer in that situation would not have known that any constitutional violation may have occurred, we granted qualified immunity to the police officer. *Id.* at 671–72. Unlike the plaintiff in *O'Malley*, King alleges she was handcuffed longer, had visible injuries, and twice complained about the handcuffs' tightness. Therefore, *O'Malley* is also inapposite.

To be sure, we held in *Fettes* that "a constitutional requirement obligating officers to stop and investigate each and every utterance of discomfort and make a new judgment as to whether the handcuffs are 'too tight' is neither reasonable nor clearly established." 375 F. App'x at 533. But we have since retreated from *Fettes*, *Lee*, and *O'Malley* in recent published authority. *See Baynes*, 799 F.3d at 616–17. We noted that these cases "are outliers in this Circuit, where at least 10 published cases, not to mention additional unpublished cases, have stated unequivocally, for over 20 years, that a right to be free from excessively forceful or unduly tight handcuffing is clearly established law." *Id.* at 616. Moreover, we explained that these cases failed to abide by *Hope v. Pelzer*—in which the Supreme Court held that even "novel factual circumstances" can put an official on notice of his unconstitutional conduct, 536 U.S. at 741—by requiring the plaintiffs to provide a near-identical case to show a clearly established right. *Baynes*, 799 F.3d at 617. Accordingly, we need not follow these distinguishable and potentially abrogated cases—two of which are unpublished.

## C.

In sum, considering the facts in the light most favorable to King, she has established that Kosmalski violated her clearly established Fourth Amendment right to be free from excessively forceful handcuffing. We therefore affirm the district court's decision that Kosmalski is not entitled to summary judgment based on qualified immunity.

## IV.

Kosmalski also claims that the district court erred by denying him governmental immunity, under Michigan law, for King's gross-negligence claim. In determining whether a state officer is entitled to summary judgment based on governmental immunity, we "apply Michigan governmental-immunity law and federal procedural law." *Bletz*, 641 F.3d at 757. Under Michigan

law, "[i]f the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts, whether the claim is barred by immunity is a question for the court to decide as a matter of law." *Beals v. Michigan*, 871 N.W.2d 5, 9 (Mich. 2015) (citation omitted).

Michigan's Governmental Tort Liability Act, Mich. Comp. Laws § 691.1401 *et seq.*, protects state employees from tort liability for injuries they cause in the course of their employment, unless their conduct amounts to gross negligence, *id.* § 691.1407(2). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* § 691.1407(8)(a). Although state officers are not immunized for grossly negligent conduct, claims styled as "gross negligence" but that are "fully premised" on intentional conduct are not cognizable claims under Michigan law. *VanVorous v. Burmeister*, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004), *abrogated on other grounds by Odom v. Wayne County*, 760 N.W.2d 217 (Mich. 2008). Thus, Michigan courts have "rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Id.* And in appeals involving gross-negligence claims under Michigan law, we have "repeatedly" held that "excessive-force claims disguised as gross-negligence claims" cannot proceed beyond summary judgment. *See, e.g.*, *Naji v. City of Dearborn*, 120 F.4th 520, 526 (6th Cir. 2024); *Bletz*, 641 F.3d at 756; *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007); *Presnall v. Huey*, 657 F. App'x 508, 513 (6th Cir. 2016).

My colleagues disagree about whether Kosmalski's conduct here amounts to gross negligence and, in turn, whether he is entitled to governmental immunity. But we need not make that determination because King's gross-negligence claim is based on the same conduct underlying her excessive-force claim, meaning it is not cognizable under Michigan law. Her complaint alleges that "when [Kosmalski] engaged in the wrongful conduct described above" (i.e., the forceful

handcuffing), he "engaged in conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted." Nothing in the district court's record demonstrates that King's gross-negligence claim arises out of any conduct other than the conduct underlying her handcuffing claim. While we have permitted gross-negligence claims "premised on allegations that officers were 'grossly negligent in failing to follow certain procedures and statutory obligations' or where the plaintiff can otherwise 'show that the defendant owed him a duty of care'" to proceed, *Richards v. City of Jackson*, 788 F. App'x 324, 336–37 (6th Cir. 2019) (citation omitted), King does not allege that Kosmalski owed her a duty of care or failed to follow internal policies or statutory obligations. Therefore, King's gross-negligence claim is "fully premised on her claim of excessive force," *VanVorous*, 687 N.W.2d at 143, and the district court erred in allowing this claim to proceed beyond summary judgment.

King's reliance on *Oliver v. Smith*, 715 N.W.2d 314, 318 (Mich. Ct. App. 2006), is "misplaced," *see Chapman v. Mack*, 2018 WL 3038528, at *6 (Mich. Ct. App. June 19, 2018) (per curiam). Although the Michigan Court of Appeals established in *Oliver* that "handcuffing an individual too tightly" can constitute gross negligence if "physical injury results," 715 N.W. 2d at 318, the court clarified in *Chapman* that "all claims against police officers that involve handcuffs" are not "automatically gross negligence claims," 2018 WL 3038528, at *6. Indeed, the court reiterated that claims based "purely on *intentional* rather than negligent conduct" constitute intentional-tort claims, not gross-negligence claims. *Id.*; *see also Jackson v. Lubelan*, 2020 WL 5496088, at *13 (Mich. Ct. App. Sept. 10, 2020) (per curiam) (allowing a gross-negligence claim involving excessive handcuffing to proceed because it was based on the "evidence that defendants *did nothing* in response to [plaintiff's] complaints for approximately 45 minutes to an hour," not affirmative, intentional conduct).

Because King's state-law gross-negligence claim is "not cognizable under Michigan law," *Livermore*, 476 F.3d at 408, we reverse the district court's denial of summary judgment in favor of Kosmalski on this claim.

V.

For these reasons, we affirm the district court's denial qualified immunity to Kosmalski on the excessive-force claim, reverse the denial of governmental immunity to Kosmalski on the gross-negligence claim, and remand for further proceedings.

**MATHIS, Circuit Judge, concurring in part and dissenting in part.** I agree with the lead opinion that the district court did not err in denying qualified immunity to Officer Nick Kosmalski on Sherrell King's Fourth Amendment excessive-force claim. So I join Parts I, II, and III of the lead opinion. But I part ways with the lead opinion's resolution of King's state-law gross-negligence claim. In my view, genuine fact issues remain about whether Kosmalski was grossly negligent during the handcuffing incident with King. Therefore, the district court did not err in denying state governmental immunity to Kosmalski.

## I.

Michigan law generally immunizes a police officer "from tort liability for an injury to a person" that the officer causes "while in the course of employment." Mich. Comp. Laws § 691.1407(2). The Michigan legislature removes that immunity when the officer's conduct "amount[s] to gross negligence." *Id.* § 691.1407(2)(c). "'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* § 691.1407(8)(a). In other words, "[g]ross negligence suggests almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Dougherty v. City of Detroit*, 986 N.W.2d 467, 475 (Mich. Ct. App. 2021) (citation modified).

Intentional conduct is not gross negligence. An officer acts intentionally when he "realizes the risk of his behavior and consciously decides to create that risk." *People v. Datema*, 533 N.W.2d 272, 280 (Mich. 1995). "Michigan has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Miller v. Sanilac County*, 606 F.3d 240, 254 (6th Cir. 2010) (citation modified). That said, "plaintiffs are barred from bringing gross-negligence claims only if those claims are 'fully premised' on alleged intentional torts." *Brent v.*

*Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 701 (6th Cir. 2018) (quoting *VanVorous v. Burmeister*, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004)).

Michigan courts have recognized that excessively tight handcuffing can constitute gross negligence if it results in physical injury. *Oliver v. Smith*, 715 N.W.2d 314, 318 (Mich. Ct. App. 2006). But "all claims against police officers that involve handcuffs are [not] automatically gross negligence claims." *Chapman v. Mack*, No. 335678, 2018 WL 3038528, at *6 (Mich. Ct. App. June 19, 2018) (per curiam). If a "plaintiff has based his claims against [a] defendant purely on *intentional* rather than negligent conduct," then the claim asserts an intentional tort. *Id.* True, "the use of handcuffs is an intentional act," but the injuries that result from using those handcuffs may be "accidentally—not intentionally—caused." *Jackson v. Lubelan*, No. 338275, 2018 WL 3309610, at *2 (Mich. Ct. App. July 5, 2018) (per curiam). In the handcuffing context, an officer acts intentionally when he "specifically intended to injure the plaintiff with the handcuffs." *Id.*

## II.

I turn now to the facts of this case. At this stage, the facts must be "viewed in the light most favorable to" King. *See Gillman v. City of Troy*, 126 F.4th 1152, 1161–62 (6th Cir. 2025). "[Q]uestions regarding whether a governmental employee's conduct constituted gross negligence are generally questions of fact for the jury." *Wood v. City of Detroit*, 917 N.W.2d 709, 714 (Mich. Ct. App. 2018).

A reasonable trier of fact could find that Kosmalski's conduct was grossly negligent. Kosmalski detained King for driving with a suspended license, a nonviolent misdemeanor offense. King told Kosmalski that she had recently had surgery. Still, Kosmalski refused King's request to be "handcuff[ed] . . . in the front." R. 26-2, PageID 277. When Kosmalski locked King's handcuffs—with her hands behind her back—she said "ouch." *Id.* at 278. And Kosmalski heard

King complain twice about the tightness of the handcuffs. After the first complaint, Kosmalski did not loosen the handcuffs. He instead double locked the handcuffs to ensure they would not tighten even more. The second complaint occurred after Kosmalski placed King in his squad car. Kosmalski ignored King's second complaint, closed the door, and left her in the squad car for more than ten minutes. Kosmalski did that even though he faced no exigency or obstacle that prevented him from rechecking King's handcuffs. And Kosmalski ignored King's pleas even though she was fully compliant and nonviolent throughout the encounter. Afterward, when Kosmalski removed the handcuffs and heard King complain about wrist pain, he told her that handcuffs were not meant to be comfortable. The result: King needed multiple surgeries to repair the injuries she sustained. Taken together, these facts support King's position that Kosmalski "simply did not care about [her] safety or welfare." *See Reilly v. Vadlamudi*, 680 F.3d 617, 627 (6th Cir. 2012) (quotation omitted).

To be sure, some evidence favors Kosmalski. He used two sets of handcuffs, checked for tension after King's first complaint, and double locked the handcuffs. But such "cherry-picked" evidence does not erase the fact that Kosmalski "*did nothing* in response to" King's second complaint. *Jackson v. Lubelan*, No. 350239, 2020 WL 5496088, at *13 (Mich. Ct. App. Sept. 10, 2020) (per curiam). And so, whether Kosmalski's conduct constitutes gross negligence is a question of fact for the trier of fact, not one of law for our court to decide. *See Beals v. Michigan*, 871 N.W.2d 5, 9 (Mich. 2015).

### III.

Kosmalski and the lead opinion reach a different conclusion. They believe King's state-law tort claim must fail because it arises from the same facts underlying her excessive-force claim. But not all excessive-force claims involve intentional conduct. Yes, excessive-force claims arising

from the use of deadly force, such as the cases the lead opinion relies on, involve intentional conduct. *See Naji v. City of Dearborn*, 120 F.4th 520, 522, 526 (6th Cir. 2024); *Bletz v. Gribble*, 641 F.3d 743, 747, 756 (6th Cir. 2011); *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007); *Presnall v. Huey*, 657 F. App'x 508, 509, 513 (6th Cir. 2016). So do excessive-force claims involving tasering or using pepper spray. And handcuffing could involve intentional conduct if the officer intends to hurt or injure the arrestee. But our precedent allows a person to succeed on an excessive-force claim for "unduly tight handcuffing" by establishing that she complained about the tightness of the handcuffs, the officer ignored the complaint, and injury resulted. *Strickland v. City of Detroit*, 995 F.3d 495, 508 (6th Cir. 2021) (quotation omitted). Thus, no intentional conduct is required.

Neither this court nor Michigan courts have held that the same conduct underlying an excessive-force claim cannot also give rise to state-law tort liability. To the contrary, this court has upheld the denial of governmental immunity under Michigan law when state-law tort claims are "heavily dependent on the same disputed material facts as the excessive-force determination under § 1983." *See, e.g.*, *Shumate v. City of Adrian*, 44 F.4th 427, 450–52 (6th Cir. 2022) (quotation omitted). And Michigan courts have adopted this court's reasoning in determining that a plaintiff can maintain a gross-negligence claim for unduly tight handcuffing if physical injury results. *See Oliver*, 715 N.W.2d at 318; *Jackson*, 2020 WL 5496088, at *12–15.

When an officer's underlying conduct is unintentional yet reckless and harmful—like in some unduly tight handcuffing cases—that conduct can support both an excessive-force claim and a state-law gross-negligence claim. *See, e.g.*, *Kostrzewa v. City of Troy*, 247 F.3d 633, 639–43 (6th Cir. 2001). And so, given that Kosmalski apparently did not intend to harm King—a point no one disputes—a trier of fact could find that Kosmalski's conduct amounted to gross negligence.

**IV.**

For these reasons, the district court did not err in denying summary judgment to Kosmalski on King's state-law gross-negligence claim.

LARSEN, Circuit Judge (concurring in the judgment in part and dissenting in part). Government officials are entitled to qualified immunity unless the plaintiff can carry the burden of showing that the official violated a clearly established constitutional right. Here, King has failed to meet that burden, so I would reverse the district court's denial of qualified immunity on her Fourth Amendment claim. I also would reverse the district court's decision denying Officer Kosmalski governmental immunity on King's gross-negligence claim under Michigan law. In my opinion, Kosmalski's conduct didn't rise to the level of gross negligence—that is, it didn't constitute conduct "so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a).

## I.

For qualified immunity, we ask (1) whether plaintiff's constitutional rights were violated, and (2) whether those rights were clearly established. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). We can address the prongs in either order. *See id.* at 236. In my opinion, Officer Kosmalski is entitled to qualified immunity because, at a minimum, King has failed to meet her burden of establishing that any violation of her constitutional rights was clearly established. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

"[F]or a right to be clearly established, existing precedent must have placed any statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (citation omitted). Here, King had "to identify a case where an officer acting under similar circumstances as Officer [Kosmalski] was held to have violated the Fourth Amendment." *Id.* General statements of law won't suffice. *Id.* And "[s]pecificity is especially important in the Fourth Amendment context"—existing precedent must "squarely govern[] the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citation omitted).

To meet her burden, King was required to come forward with published caselaw showing that the law is clearly established. *See Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022). King primarily relies on two cases—*Morrison v. Board of Trustees of Green Township*, 583 F.3d 394 (6th Cir. 2009), and *Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015). Neither squarely governs the specific facts at issue here.

Recall those facts. When Kosmalski began to handcuff King, she asked not to be handcuffed in the back because she recently had breast cancer surgery. Showing attention to that concern, Kosmalski said that he would use two pair of handcuffs linked together. Once Kosmalski put the handcuffs on King, she said that the handcuffs were "kinda tight." Both officers on the scene then checked the tightness of the handcuffs by placing a finger between a cuff and King's wrist. This was done to ensure that there was "ample space." Kosmalski also double locked the handcuffs, meaning they could not be inadvertently loosened nor tightened. From there, the officers escorted King to their patrol car. As the officers placed King in the vehicle, she said: "This shit hurt in the back, on my wrist." Kosmalski didn't respond or check the handcuffs again. King was handcuffed for about fifteen minutes total.

Now the cases offered by King. She points to *Morrison v. Board of Trustees of Green Township*, 583 F.3d 394 (6th Cir. 2009). There, the plaintiff complained that the handcuffs were too tight. *Id.* at 398. Although the officer said that "he responded to the complaint by sticking his finger in between the handcuffs and [the plaintiff's] skin to make sure they were not 'too tight,'" the plaintiff and a witness "testified that he disregarded the complaint and refused to loosen the handcuffs." *Id.* at 402. To make matters worse, the officer then said "that he could place the handcuffs on 'as tight as he wanted to and that's how they were staying.'" *Id.*

*Morrison* doesn't squarely govern the conduct here. It didn't involve two complaints in quick succession as we have in this case. And it doesn't even appear to involve an officer who actually checked the tightness of the handcuffs. Rather, the plaintiff's testimony, which must be taken as true at the summary judgment stage, was that the officer didn't check and instead responded callously. Contrast that with Kosmalski's conduct here, in which he sought to accommodate King's concerns about pain by linking two pairs of handcuffs together, made sure the handcuffs were double locked so they couldn't slip, and immediately responded to her first complaint by checking to ensure there was ample space. *Morrison* does nothing to put Kosmalski on notice that he had to check the handcuffs again a few moments later.

King's second case—*Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015)—is equally inapposite. To be sure, *Baynes* read *Morrison* to stand for the proposition "that a dismissive response from an officer is sufficient to meet the second prong of a claim for excessively forceful handcuffing." *Id.* at 609. But that general rule can't create a clearly established right in this case because the facts aren't sufficiently similar. In *Baynes*, the plaintiff complained separately to two officers about the tightness of the handcuffs. *Id.* at 608–09. Neither ever responded, *id.*, unlike Kosmalski here. Nothing about the factual situation in *Baynes* would put an officer on notice that he had a duty to check the handcuffs again just a few moments after checking the first time. And that includes the panel's later broad statement that "[a]s early as 1993, we held that it was clearly established law in this circuit in 1991 . . . that excessively forceful handcuffing violates the Fourth Amendment prohibition against excessive force." *Id.* at 613. Such general statements of the law are insufficient to render the law clearly established, *White*, 580 U.S. at 79, and the Supreme Court has made clear, after *Baynes*, that this is especially true in the excessive force context, *Kisela*, 584 U.S. at 104. *Baynes* doesn't cover the conduct here. As a result, King has failed to meet her

burden of establishing that Kosmalski wasn't entitled to qualified immunity. So I would reverse the district court's denial of qualified immunity on this claim.

II.

For King's gross negligence claim under Michigan law, she must demonstrate that Kosmalski's conduct was "so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a). "Gross negligence suggests almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Dougherty v. City of Detroit*, 986 N.W.2d 467, 475 (Mich. Ct. App. 2021) (citation omitted). "[S]imply alleging that an actor could have done more is insufficient to meet the standard for gross negligence under the GTLA." *Id.* (citation omitted).

Assuming that King's gross negligence claim is cognizable under Michigan law, her claim fails because Kosmalski's conduct does not rise to the level of gross negligence. As explained previously, King asked not to be handcuffed in the back because she recently had breast cancer surgery. Kosmalski didn't disregard this request but attempted to accommodate her concerns by using two handcuffs linked together. And once King complained that the handcuffs were "kinda tight," both officers checked the tightness of the handcuffs by placing a finger between a cuff and King's wrist. This was done to ensure that there was "ample space." Kosmalski also double locked the handcuffs, meaning they could not be inadvertently loosened nor tightened. So up until that point, Kosmalski's conduct was far from "a willful disregard of precautions or" safety measures, but rather an ample regard for them. *See id*; *see also Tarlea v. Crabtree*, 687 N.W.2d 333, 340 (Mich. App. 2004) ("[T]he coaches' conduct showed that they performed their duties in a manner that exhibited care and concern for the student athletes. Rather than a substantial *lack* of concern, the coaches showed substantial concern for the well-being of their students."). Does

King's complaint a minute later change Kosmalski's otherwise reasonable response to gross negligence? It does not. Having checked the locks minutes before, not checking them again doesn't amount to "a singular disregard for substantial risks." *Id.* at 339. At most, Kosmalski could have done more, but that's insufficient to show gross negligence. *Id.* Accordingly, King's gross negligence fails, and I would reverse the district court's conclusion to the contrary.

* * *

I respectfully concur in the judgment in part and dissent in part.